United States District Court
Southern District of Texas
**ENTERED**
March 11, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MOHAMED BENCHELLAL ET AL., | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-4435 |
| | § | |
| THE OKONITE COMPANY, INC., | § | |
| *Defendant*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is before the Court on Defendant The Okonite Company, Inc.'s Motion for Summary Judgment.[1]   ECF 33.   Having considered the parties' submissions and the law, the Motion is GRANTED.

As a preliminary matter, the Court addresses the proper name of the Plaintiff entity in this case.   Defendant argues that the real party in interest in this case, Benchellal Electrical Engineering S.A.R.L., has not been named in the suit.   ECF 33 at 7 n.1.   Plaintiffs' Original Complaint was filed on behalf of Mohamed Benchellal and Benchellal Electrical Engineering, "a foreign company duly registered according to the laws of the country of Morocco."   ECF 1 ¶ 2.   It is not clear whether Defendant objects to the failure to include the designation "S.A.R.L." in the name of the company, or contends that Benchellal Electrical Engineering is a separate

---

[1] The parties have agreed to the jurisdiction of the Magistrate Judge for all purposes, including entry of final judgment.   ECF 22.

entity from Benchellal Electrical Engineering S.A.R.L.   However, the Court clarifies, based on Plaintiffs' pleadings and representations set forth below, that Benchellal Electrical Engineering S.A.R.L. is the proper entity and has been named as a Plaintiff in this suit.

Plaintiffs' Amended Certificate of Interested Parties filed with this Court on March 30, 2023, named "Benchellal Electrical Engineering S.A.L.," (missing the "R" in S.A.R.L.).  ECF 13.  On July 20, 2023, Plaintiffs filed an Amended Certificate of Interested Parties identifying the company as "Benchellal Electrical Engineering, S.A.R.L." and also began using the S.A.R.L. in the case caption on pleadings in the case.  *See* ECF 30; ECF 31.  Based on these corrections, the Court concludes that "Benchellal Electrical Engineering S.A.R.L." is the correct name for the Plaintiff and the omission of the designation "S.A.R.L." and the "R" in "S.A.R.L." in earlier filings reflects merely a misnomer that has no bearing on the merits of the case.  The Court will direct the clerk to correct the name of the Plaintiff entity to "Benchellal Electrical Engineering, S.A.R.L."

## I.      Background

Plaintiffs Mohamed Benchellal and Benchellal Electrical Engineering S.A.R.L. (collectively referred to as "Benchellal") approached Defendant Okonite in June 2021 seeking to purchase custom electrical cable.  ECF 1 ¶ 5.  Prolonged negotiations took place via email over the course of the next year, primarily between

Plaintiff Mohamed Benchellal (email address mohamed@benchellal.ma), and Okonite representatives Gloria Konen (email address G.Konen@okonite.com) and Dane Martindale (email address d.martindale@okonite.com). *See* ECF 33-13. As part of those negotiations, Konen informed Benchellal that Okonite would require Benchellal to make payment in advance or obtain a Letter of Credit from a U.S. Bank. ECF 33-6 at 2; 33-13 at 8-11, 14, 17, 21. On June 22, 2022, Benchellal informed Okonite that it "decided to go with LC [Letter of Credit] at sight as you proposed in your last email." ECF 33-6 at 15. After further discussion, on July 26, 2022, Konen informed Benchellal that "Unfortunately, none of the LC options we have discussed are acceptable and it appears that the Moroccan government regulation and Okonite policies [requiring payment in advance] are not compatible." ECF 33-13 at 4. On August 8, 2022, Okonite's Dane Martindale sent an email to Mohammed Benchellal expressing frustration that Mohammed Benchellal had shared Okonite's pricing with third parties and was contacting high-level Okonite employees instead of negotiating with Martindale and Konen. ECF 33-13 at 3. Benchellal responded to the email stating that Okonite "switched to prepayment," and stating further "You must be cl[ea]r from the be[gin]ing that you accept 100% prepayment, we will select another company more flexible and reliable." ECF 33-13 at 2.

3

The record contains an email written by Benchellal eight days later, on August 16, 2022, asking Gloria Konen whether Okonite could improve the lead time for standard cables, and she responded that production schedules were out of Okonite's control.  ECF 13-12 at 8-9.  Nothing in the record demonstrates that prior to August 16, 2022, the parties had resolved the conflict referenced in Konen's July 26, 2022 email.  ECF 33-13 at 4.  The next day, August 17, 2022, a criminal actor entered the email conversation.

On August 17, 2022, someone using the account G.Konen@okonte.com (Konen's email address minus the "i" in Okonite) wrote an email to Benchellal stating:  "[w]e will send you our wire transfer information for the deposit payment of your order upon your request."  ECF 33-12 at 7.  Benchellal sent an email to Konen's correct address, G.Konen@okonite.com, asking her to confirm the banking details.  ECF 33-12 at 6.  However, the response to Benchellal came from the fake account, G.Konen@okonte.com, and included information for a Citibank account. *Id.*  Konen previously had sent Benchellal wire instructions for Bank of America.  ECF 33-7 at 14.  In fact, Konen had informed Benchellal that Bank of America was Okonite's "main and practically only bank."  ECF 33-9 at 7, 5.  Prior to the August 17, 2022 email from the fake email account, Citibank had never been mentioned as a bank at which Okonite maintained an account.  It is clear that Benchellal was aware that this was a change from prior instructions because he stated in response "CITI

4

BANK is better than bank of America."  ECF 33-12 at 6.  Yet, a few days later Benchellal wired $245,887.08 to a Citibank account as payment "for the special cable and 50% of the standard cables."  ECF 33-12 at 4-5.

The fake email account and Benchellal exchanged follow-up emails in the days following the initial August 17, 2022 email.  ECF 33-12 at 2-6.  Finally, on September 7, 2022, after Benchellal's payment had been received by the Citibank account, the hacker apparently disappeared and emails again began reaching Konen at her email address.  *See* ECF 33-12 at 2 (Konen's response to Benchellal's September 7, 2022 email).  Konen's response to Benchellal's September 7, 2022 email stated "our Finance Department is working with the information you have provided.  However, without receipt of the funds in our bank account, we cannot proceed with your purchase order."  *Id.* at 2.  Also on September 7, 2022, Konen informed Benchellal that the email address that forwarded the Citibank account information was not her correct email address and that Okonite representatives were "never a part of that" chain of communications.  ECF 33-3 at 2.

Plaintiffs filed a Complaint in this court on December 21, 2022 asserting causes of action against Okonite for negligence, violation of the Texas Business and Commerce Code § 3.406, and breach of contract.  ECF 1.  Pursuant to Texas Civil Practice and Remedies Code § 33.004(a), the Court granted Okonite's motion to designate as responsible third parties an individual named Jampa Gill, whom

Okonite believes to be the hacker, as well as an unknown hacker, "John Doe."  ECF

40.  Okonite's Motion for Summary Judgment on all of Plaintiffs' claims is now ripe

for resolution.  ECF 33; ECF 34; ECF 35.

## II.    Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist,

and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P.

56(a).  The party moving for summary judgment has the initial burden to prove there

are no genuine issues of material fact for trial.  *Provident Life & Accident Ins. Co.*

*v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).  Dispute about a material fact is

"genuine" if the evidence could lead a reasonable jury to find for the nonmoving

party.  *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).  "An issue is material if

its resolution could affect the outcome of the action."  *Terrebonne Parish Sch. Bd.*

*v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).  If the

moving party meets its initial burden, the nonmoving party must go beyond the

pleadings and must present evidence such as affidavits, depositions, answers to

interrogatories, and admissions on file to show "specific facts showing that there is

a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The court construes the evidence in the light most favorable to the nonmoving

party and draws all reasonable inferences in that party's favor.  *R.L. Inv. Prop., LLC*

*v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).  In ruling on a motion for summary

judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987).  However, "[c]onclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citation omitted).

## III.   Analysis

### A. Defendants are entitled to judgment as a matter of law on Plaintiffs' common law negligence claim.

Plaintiffs have asserted a common law negligence claim alleging Defendant negligently failed to warn of the cyber hack and failed to train its employees to detect, report, and delete fishing emails that compromise email security.  ECF 1, ¶¶ 14-17.  Defendant has moved for summary judgment, arguing first that Plaintiffs lack standing to assert the negligence claim, and next that the claim fails as a matter of law because Plaintiffs cannot show that Defendant owed Plaintiffs a duty of care. ECF 33 at 12.  As discussed below, Plaintiffs negligence claim fails as a matter of law because (1) Plaintiffs have not met their summary judgment burden to present competent evidence demonstrating their injury is fairly traceable to the Defendant's conduct, and (2) Plaintiffs cannot demonstrate an essential element of their

negligence claim—that Defendant owed a duty of care to prevent the scam perpetrated by a criminal third party.

### 1. Plaintiffs have failed to meet their burden to raise an issue of fact as to whether their injury is fairly traceable to Defendant's conduct.

Defendant argues that Plaintiffs lack standing to sue and therefore this Court lacks subject matter jurisdiction. The "irreducible constitutional minimum of standing" requires plaintiff to show (1) an injury that is concrete, particularized, and actual or imminent; (2) that is fairly traceable to defendant's conduct; and (3) that is likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Defendant argues that even if Plaintiffs demonstrate an actual injury, the alleged injury is not "fairly traceable" to Defendant's conduct—the alleged negligent failure to warn Plaintiff and failure to train its own employees—and therefore, as a matter of law, lacks a required element of standing. ECF 33 at 12-14.

Defendant cites *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847 (S.D. Tex. 2015) as support for its argument that Plaintiffs lack standing. ECF 33 at 14. The question before the *Peters* court was "whether the heightened risk of future identity theft/fraud posed by a data security breach confers Article III standing on persons whose information may have been accessed." 74 F. Supp. 3d at 849. The

Court found the injury alleged in *Peters* was too speculative to constitute an "imminent injury," *id.* at 854-56, and further found that plaintiff's allegations failed to meet the causation and redressability requirements for standing due to the "break in causation caused by opportunistic third parties" and plaintiff's lack of "any quantifiable damage or loss" to be remedied. *Id.* at 857. Here, Plaintiffs suffered an actual, concrete injury in the amount of $245,887.08 and therefore meet the particularized injury requirement for standing.

As stated in *Spokeo, Inc.*, 578 U.S. at 338, and the other cases cited above, an injury must be "fairly traceable" to the defendant's conduct to support standing. Likewise, a plaintiff asserting a negligence claim under Texas law must show the plaintiff's injury was proximately caused by the defendant's conduct. *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022) (identifying the elements of a negligence claim under Texas Law as: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach). Here, Defendant's standing argument disputes the element of causation rather than subject matter jurisdiction. *See Garrison Realty, L.P. v. Fouse Architecture & Interiors, P.C.*, 546 F. App'x 458, 461 (5th Cir. 2013) (holding that whether the defendant owed a legal duty to the plaintiff is an element of plaintiff's tort claims, "not a component of standing that implicates the court's subject matter jurisdiction" (citations omitted)). Nonetheless, the Court agrees that Plaintiffs have not presented any competent summary judgment

9

evidence creating a fact issue as to whether Plaintiffs' injury is fairly traceable to or proximately caused by Defendant's negligence.

Significantly, Plaintiffs have failed to present competent summary judgment evidence demonstrating the email scam resulted from a "hack" into Defendant's computer network. Plaintiffs have similarly failed to present competent summary judgment evidence demonstrating that Defendant violated a standard of care, negligently left its computer network vulnerable to attack, or failed to train its employees. Plaintiffs' evidence of causation consists of hearsay and speculation contained in the Declaration of Mohamed Benchellal and statements in a problematic Affidavit from Plaintiffs' counsel.[2]  Benchellal's Declaration reports hearsay from the Moroccan police who examined Benchellal's laptop and informed Benchellal that it had had not been hacked. ECF 34-2. Even ignoring the obvious hearsay objections to the statements in the Declaration, statements from a Moroccan police representative reporting that Benchellal's laptop was not hacked do not constitute any evidence that Defendant's computer network was hacked. At best those statements support speculation that Defendant's network was hacked.

---

[2]  The presentation of testimony from Plaintiff's counsel in an attempt to raise fact issues on required elements of a cause of action in response to a summary judgment motion is problematic. *See In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004) (holding that disqualification is appropriate if "a lawyer's testimony is necessary to establish an essential fact."); *Landmark Graphics Corp., a subsidiary of Halliburton Co. v. Seismic Micro Tech., Inc.*, No. CIVA H-06-1790, 2007 WL 735007, at *6 (S.D. Tex. Jan. 31, 2007) (recognizing general prohibition on lawyer likely to be a witness from acting as counsel at trial).

Accordingly, Plaintiffs have provided nothing except supposition and speculation to support the claim that the email scam originated with Defendant's computer network and therefore have failed to meet their summary judgment burden to create a fact issue on a required element of the negligence claim.

The only other evidence Plaintiffs have presented intending to link the hack to Defendant is the affidavit of Plaintiffs' counsel, Mehdi Cherkaoui. Cherkaoui's affidavit purports to repeat statements by Okonite's vice president/general counsel, Frank Giuliano, and an unidentified person from the New York Police Department Special Fraud Unit, that Benchellal was not the only victim of the email scam. ECF 34-3. From these statements, Plaintiffs ask the Court to speculate that the email scam must have originated with Defendant's computer network. Again, ignoring the obvious hearsay issue regarding statements from an unidentified NYPD representative, and ignoring the obvious problem presented by counsel injecting himself into the case as a witness, Cherkaoui's Affidavit does not create a genuine issue of material fact as to whether Plaintiffs' injury was caused by Defendant's negligent failure to warn or failure to train. Like Benchellal's Declaration, Cherkaoui's Affidavit at best supports supposition that Defendant's computer network was compromised. It fails to raise an issue of material fact as to the origin or cause of the hack.

Moreover, courts within the Fifth Circuit have repeatedly held that intervening acts of third parties break the chain of causation for standing purposes. *S. Christian Leadership Conf. v. Supreme Ct. of State of La*., 252 F.3d 781, 788 (5th Cir. 2001) (noting that an injury must not be the result of the independent action of a third party); *Zamarripa v. Farrakhan*, No. 3:16-CV-3109-N, 2017 WL 11563226 at *4 (N.D. Tex. June 20, 2017) (standing not supported where injury was the result of third party action); *Pennie v. Obama*, 255 F. Supp. 3d 648, 661 (N.D. Tex. 2017) (plaintiffs' allegations about intervening acts of third parties breach the chain of causation); *Peters v. St. Joseph Services Corp*., 74 F. Supp. 3d 847, 854 (S.D. Tex. 2019) (citing *S. Christian Leadership Conf. v. Supreme Ct. of State of La*., 252 F.3d 781, 788 (5th Cir. 2001). Thus, whether analyzed as an element of standing or an element of the negligence claim, Plaintiffs have not met their burden to show their injury is fairly traceable to, or proximately caused by, Defendant's negligent conduct. Defendant is entitled to summary judgment on Plaintiffs' common law negligence claim for this reason.

**2. In addition, Plaintiffs have failed to meet their burden to demonstrate that Defendant owed them a duty of care as required for the common law negligence claim.**

The threshold inquiry in any negligence case is usually the existence of a duty of care owed by the defendant. *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). The burden to prove that the defendant owed a duty of care to the

plaintiff rests with the plaintiff. *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004) (citations omitted). The existence of a duty of care is a legal question for the court to decide. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998) (whether defendant had duty to provide security to protect against violent criminal activity at complex was question of law for the court). A duty of care may be imposed by common law, statute, or contract. *Greer v. Carpenters Landing HOA*, No. 4:19-CV-03436, 2020 WL 2476778, at *3 (S.D. Tex. Apr. 6, 2020), *report and recommendation adopted*, No. CV H-19-3436, 2020 WL 2475756 (S.D. Tex. May 13, 2020).

Defendant makes two arguments for why it owed no duty of care to Plaintiffs. First, Defendant argues that "a person has no legal duty to protect another from the criminal acts of a third person," citing *Timberwalk Apartments,* 972 S.W.2d at 756 (quoting *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)). Second, Defendant argues that contracting parties have no duty to protect each other from the "economic loss of a contractual expectancy," citing *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). Plaintiffs present no rejoinder to these arguments.

Recognizing that "Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances," Plaintiffs argue that the parties had a special relationship which created a duty for

Okonite to act to prevent harm to Plaintiffs.  ECF 34 at 15 (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000)).  Texas courts impose extra-contractual duties between contracting parties only in the context of "discrete, special relationships earmarked by specific characteristics including:  long standing relations, an imbalance of bargaining power, and significant trust and confidence shared by the parties." *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016).  Significantly, "the relationship must exist before and apart from the contract or agreement that forms the basis of the controversy."  *Id.* (citing *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex.1995)).  None of the earmarks of a special relationship are present in this case.

Plaintiffs also appear to argue that the circumstances of this case imposed a duty of reasonable care on Defendant in its interactions with Plaintiffs, citing a Texas Supreme Court case, *Torrington Co. v. Stutzman*, as well as two unreported cases from outside the Fifth Circuit.  ECF 34 at 15-16.  In *Torrington*, the Texas Supreme Court noted that Texas law does not impose a general duty for a party to act as a "good Samaritan" to protect others, but that when a party undertakes to provide services to another, either gratuitously or for compensation, a duty to use reasonable care in those services may arise.  46 S.W.3d at 837.  Plaintiffs have not identified any "undertaking" by Defendant absent the arms-length contract negotiations for the

14

sale of electric cables.  Thus, the duty of care created when a "good Samaritan" volunteers its services gratuitously or for compensation does not apply here.

Plaintiffs cite *Arrow Truck Sales, Inc. v. Top Quality Truck & Equip., Inc.*, No. 8:14-CV-2052-T-30TGW, 2015 WL 4936272, at *6 (M.D. Fla. Aug. 18, 2015) and *Beau Townsend Ford Lincoln, Inc. v. Don Hinds Ford, Inc.*, 759 F. App'x 348, 357 (6th Cir. 2018) for the proposition that in the context of an email scam, the party in the best position to prevent the fraud owes a duty to prevent the fraud and/or should bear the risk of loss.  ECF 34 at 16, 19.  Plaintiffs' reliance on these cases is misplaced.  Most importantly, the rulings cited by Plaintiffs were not made with respect to negligence claims.  The Sixth Circuit case did not involve a negligence claim at all and therefore never addressed whether a duty of care existed.  *Beau Townsend Ford Lincoln*, 759 F. App'x at 352 ("Beau Townsend sued Don Hinds for (1) breach of contract, (2) conversion, and (3) unjust enrichment, constructive trust, and disgorgement.").  Although *Arrow Truck Sales, Inc.,* included a negligence claim, the Court found Arrow could not recover on that claim because it did not prove the defendants mishandled their email accounts.  The *Arrow* court applied the "imposter rule" that is used in the banking context when dealing with third party imposters who forge checks.  Applying the "imposter rule" the court concluded Arrow should bear the loss because Arrow's employee

> should have exercised reasonable care after receiving conflicting emails
> containing conflicting wire instructions by calling … to confirm or

> verify the correct wire instructions prior to sending the $570,000.  As
> such, Arrow should suffer the loss from the fraud.

*Arrow Truck Sales, Inc.,* 2015 WL 4936272, at *6.  The undisputed evidence in this

case demonstrates that Benchellal received conflicting wire instructions and instead

of calling to confirm the correct instructions, asked for confirmation from a

fraudulent email address and then wired the funds to a fraudulent account.  Plaintiffs

have presented no evidence demonstrating that Okonite was in the better position to

prevent Benchellal from falling victim to the scam.

Plaintiffs argue that Okonite's email system attempted to "raise a red flag

about the fake email address [mohamed@benchellalma.com which had been created

by a hacker pretending to be Mohammed Benchellal] and caution[ed] Ms. Konen to

proceed carefully."  ECF 34 at 10.  The referenced email exchanges between Konen

and the hacker generated a warning banner stating "You don't often get emails from

mohammed@benchellalma.com" and provided a bold hyperlink stating "Learn why

this is important."  *Id.*  Plaintiffs argue this banner should have alerted

Konen/Okonite of a duty to act in order to prevent harm to Plaintiffs.  *Id.*  Yet, the

email on which the warning banner appeared is dated September 1, 2022.  Thus, the

warning banner could not have created a duty to warn Plaintiffs in August 2022 not

to wire money to the fraudulent Citibank account thinking it was Okonite's account.

Finally, even if Plaintiffs could establish a duty owed by Defendant, no duty

protects a plaintiff from purely economic losses.  As noted by Defendant, the

economic loss rule precludes recovery in tort when the injury consists only of the economic losses of a contractual expectancy.  *See Chapman Custom Homes, Inc. v. Dallas Plumbing Co*., 445 S.W.3d 716, 718 (Tex. 2014) (holding that a party stated a tort claim only when the duty breached is independent of the contact and the harm is not merely the economic loss of the contract benefit).  Plaintiffs have presented evidence only of economic losses from a contractual expectancy and therefore cannot recover those losses in a negligence claim.

In sum, Defendant is entitled to summary judgment dismissing Plaintiffs' negligence claims because Plaintiffs cannot establish that Defendant owed Plaintiffs a duty of care which was breached and caused Plaintiffs' injury, and even if they could, they cannot recover economic losses from an expected contract in tort.

**B. Defendant is entitled summary judgment on Plaintiffs' claim for negligence under Texas Business & Commerce Code § 3.406.**

Plaintiffs also assert a negligence claim pursuant to Chapter 3 of the Texas Business and Commerce Code (UCC) § 3.406, which is titled "Negligence Contributing to Forged Signature or Alteration of Instrument."  Section 3.406 applies to negotiable instruments and provides in full:

> (a) A person whose failure to exercise ordinary care substantially contributes to an alteration of *an instrument or to the making of a forged signature on an instrument* is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the *instrument* or takes it for value or for collection.

(b) Under Subsection (a), if the person asserting the preclusion fails to exercise ordinary care in *paying or taking the instrument* and that failure contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

(c) Under Subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under Subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.

(emphasis added). This case does not involve a negotiable instrument and Plaintiffs have not identified a negotiable instrument that was allegedly forged or altered. *See* ECF 34. Section § 3.104 of the Texas Business and Commerce Code defines a negotiable instrument as an "unconditional promise to pay a fixed amount of money," and includes several other specific characteristics of a negotiable instrument, none of which describe any of the emails in the record in this case. Section 3.406 creates a limit on the defenses available in a case for forgery of a negotiable instrument, and simply does not apply to the facts of this case.

As discussed with respect to their common law negligence claims, Plaintiffs' reliance on the "imposter rule" to support a negligence claim under § 3.406 claim is without merit. *See* ECF 34 at 17-20. The imposter rule is a doctrine that some courts have applied in breach of contract and conversion claims under the UCC to allocate the risk of loss due to fraudulent misdirection of payments. *See, e.g., J.F. Nut Co., S.A. de C.V. v. San Saba Pecan, LP*, No. A-17-CV-00405-SS, 2018 WL 7286493, at

*3 (W.D. Tex. July 23, 2018) (holding that a jury must allocate the fault for misdirected contract payments).  Neither the imposter rule, nor any of the cases cited by Plaintiffs, converts § 3.406 into a general-purpose negligence statute that applies in the absence of a negotiable instrument and imposes a duty of care to prevent scammers from hacking email.  Plaintiffs have failed to meet their summary judgment burden to raise an issue of fact regarding their negligence claim under § 3.406 and therefore Defendant is entitled to summary judgment on the claim.

### C. Plaintiffs have failed to meet their summary judgment burden with respect to their breach of contract claim.

The essential elements of a breach of contract claim under Texas law are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex.App.—Houston [14th Dist.] 2005, pet. denied).  Whether an enforceable contract exists is generally a question of law for the court.  *Jetall Companies, Inc. v. Jefferson Smith, L.L.C.*, No. 01-20-00461-CV, 2022 WL 2347922, at *4 (Tex. App.—Houston [1st Dist.] June 30, 2022, pet. denied).

"[T]he elements required for the formation of a valid contract are: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the

contract with the intent that it be mutual and binding." *Levetz v. Sutton*, 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013, no pet.).  Based on the summary judgment record, Okonite never agreed to accept a partial payment; and Benchellal never agreed to pay 100% up front, indicating no valid contract was formed.  However, assuming for purposes of summary judgment that the parties formed a valid contract, Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim.

Defendant presents two arguments in support of its motion for summary judgment on Plaintiffs' breach of contract claim: (1) Mohamed Benchellal lacks standing because the contract was between Okonite and the company Benchellal Electrical Engineering, S.A.R.L., and (2) Plaintiffs failed to perform under the contract and therefore cannot prove a required element of the breach of contract claim.  With respect to Defendant's first argument, Mohamed Benchellal is the sole owner of Benchellal Electrical Engineering S.A.R.L. and the person who sent all the emails regarding the parties' negotiations for the sale and purchase of electrical cables.  ECF 34-2.  The Court need not determine whether these facts confer standing on Mohamed Benchellal to enforce the contract through a breach of contract action because Benchellal Electrical Engineering S.A.R.L. is also a Plaintiff, and Defendant's second argument, that Plaintiffs did not perform under the contract, is dispositive.

The Parties' alleged contract required Benchellal to wire money to Okonite's bank account in exchange for electrical cable.  *See* ECF 33-13.  The record evidence conclusively shows, and Plaintiffs do not dispute, that Benchellal never wired money to Okonite's bank account.  ECF 34-1 (indicating money was wired to Citibank, not Bank of America); ECF 1 ¶ 22 (alleging Benchellal wired funds to a third party).  Therefore, Plaintiffs never performed their contractual obligation to pay Okonite for the electrical cable.  Absent performance by Plaintffs, Okonite cannot be held liable for breach of contract.

Plaintiffs attempt to meet the required element of performance by arguing they paid according to instructions from an email hacker with apparent authority to accept payment for Okonite.  However, only the actions of the principal can create apparent authority.  *NationsBank N.A. v. Dilling*, 922 S.W.2d 950, 952-53 (Tex. 1996) (holding that the bank could not be vicariously liable because plaintiff had no proof that the bank knowingly permitted the third party to hold itself out as having the bank's authority to give investment advice).  Here, no conduct by Okonite or its actual agents created any apparent authority in the email hacker.  This Court agrees with the sentiment of the court in *J.F. Nut Co.*:

> [N]either party was aware an agent—the alleged email hacker—even existed.  [Plaintiff] has presented no case law (nor has the Court found any) in which apparent authority was applied to bind a principal for actions of an agent impersonating the principal itself.   The court sees no basis for extending the doctrine of apparent authority here.

21

2018 WL 7286493, at *3.   Thus, Plaintiffs have failed to meet their summary judgment burden to raise an issue of fact as to whether they performed under the contract and Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim.

### IV.   Conclusion and Order

For the reasons discussed above, Okonite's Motion for Summary Judgment (ECF 33) is GRANTED.   Plaintiffs' claims in this case are DISMISSED WITH PREJUDICE.   The Court will issue a separate Final Judgment.

Signed on March 11, 2024, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge